Martin WALLACE and Debbi
Redante, Appellees,

v.

Vincent PASTORE, Appellant.

Superior Court of Pennsylvania.

Submitted July 28, 1999.
Filed Dec. 2, 1999.

Thomas E. Coval, Willow Grove, for appellant.

Ronald J. Smolow, Trevose, for appellees.

Before McEWEN, President Judge, MUSMANNO and OLSZEWSKI, JJ.

MUSMANNO, J.

¶ 1 Appellant Vincent Pastore ("Pastore") appeals from a judgment entered in favor of Appellees Martin Wallace ("Wallace") and Debbi Redante ("Redante") in an action to recover a security deposit. We affirm.

¶ 2 Wallace and Redante rented an apartment from Pastore under a written lease. On October 14, 1996, after providing Pastore with written notice of termination of the lease, Wallace and Redante moved out of the apartment.

¶ 3 Subsequently, Wallace and Redante filed a Complaint with a District Justice, seeking recovery of their $600 security deposit. The District Court awarded judgment in favor of Wallace and Redante. Pastore filed an appeal of that judgment in the Court of Common Pleas of Bucks County. The trial court ordered Wallace and Redante to file a Complaint, and they subsequently did so. In the Complaint, Wallace and Redante sought return of their security deposit, double damages under the Landlord Tenant Law, see 68 P.S. § 250.512(c),[1] and treble damages and attorneys fees under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), see 73 P.S. § 201–1 et seq.[2] Pastore then filed a counterclaim against Wallace and Redante seeking $5,886.68 as alleged damages to the apartment. The trial court consolidated the Complaint and counterclaim upon stipulation of the parties.

¶ 4 A panel of arbitrators heard the parties' claims, and found in favor of Wallace and Redante. The arbitrators awarded Wallace and Redante $636.00 plus interest. Pastore then appealed that award.

¶ 5 After a bench trial, the trial court entered a verdict in favor of Wallace and Redante, and awarded them $600.00, the amount of their security deposit. The trial court considered post-trial motions, and awarded Wallace and Redante treble damages in the amount of $1,800.00, and attorney's fees of $4,980, plus interest and costs. Subsequently, judgment was entered on the verdict, and Pastore then filed this timely appeal.

¶ 6 On appeal, Pastore raises the following issues: (1) whether Pastore's withholding of Wallace's and Redante's security deposit constituted a violation of the UTPCPL; (2) whether the trial court erred in entering an award of counsel fees; and (3) whether the trial court erred in awarding a return of the entire security deposit.

¶ 7 In reviewing a decision of a court after a non-jury trial, we will reverse the trial court only if its findings are predicated on an error of law or are unsupported by competent evidence in the record. Hodges v. Rodriguez, 435 Pa.Super. 360, 645 A.2d 1340 (1994).

¶ 8 Pastore first contends that the UTPCPL does not apply to the withholding of a single security deposit from a single tenant because the Landlord Tenant Law, section 250.512(c), applies in those circumstances. Therefore, he contends that the trial court erred in awarding treble damages and counsel fees under the UTPCPL.

¶ 9 The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by ... section 2 of this act...." 73 P.S. § 201–3. Unfair or deceptive acts or practices, under section 2 of the UTPCPL, include, inter alia, the following:

(xv) knowingly misrepresenting that services, replacements or repairs are needed if they are not needed....

73 P.S. § 201–2(4). A person who leases or purchases goods or services "primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property ... as a result" of an unfair or deceptive practice under the UTPCPL, may bring a private action to recover those damages, and the court may, in its discretion, "award up to three times

---

1. Section 250.512(c) of the Landlord Tenant Law requires a landlord to double the amount he must pay to the tenant if the landlord fails to pay, within thirty days after termination of the lease, an amount equal to the amount of the security deposit minus the actual amount of damages to the premises caused by the tenant.

2. Under the UTPCPL, the court may award up to three times the damages sustained by a person who purchases or leases goods or services primarily for family, personal, or household purposes and suffers a loss of money or property as a result of an unfair or deceptive business practice. 73 P.S. § 201–9.2.

the actual damages sustained." 73 P.S. § 201–9.2(a).

¶ 10 The UTPCPL must be liberally construed to effect the law's purpose of protecting consumers from unfair or deceptive business practices. *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974). The Pennsylvania Supreme Court has held that the UTPCPL applies to the leasing of residences. *Id.* (stating that the modern apartment dweller is a consumer of housing services). In addition, the remedies of the UTPCPL are not exclusive, but are in addition to other causes of action and remedies. *Gabriel v. O'Hara,* 368 Pa.Super. 383, 534 A.2d 488, 495 & 495 n. 22 (1987); *see also Johnson v. Hyundai Motor Am.,* 698 A.2d 631, 637 (Pa.Super.1997) (stating that a violation of the Pennsylvania Lemon Law, 73 P.S. §§ 1952–63, was also a violation of the UTPCPL in an action brought under both statutes for damages arising from a defective vehicle).

¶ 11 In the present case, the trial court found that Pastore knowingly misrepresented to Wallace and Redante that they owed thousands of dollars in repairs and labor. Trial Court Opinion, 11/17/98, at 19. The trial court held that Pastore's actions were clearly fraudulent and were a violation of section 201–2(4)(xv) of the UTPCPL. *Id.*

¶ 12 Pastore contends, however, that an action by a tenant against a landlord under the UTPCPL requires the landlord to have engaged in "frequent" deceptive practices, and that a single instance of withholding a security deposit is not equivalent to "frequent" deceptive practices. Pastore relies on the decision of the Commonwealth Court in *Commonwealth by Zimmerman v. National Apartment Leasing Co.,* 108 Pa.Cmwlth. 300, 529 A.2d 1157 (1987), for that proposition. In that case, the Pennsylvania Attorney General brought an action under the UTPCPL against National Apartment Leasing Company ("NALCO"), seeking civil damages and an injunction on the basis of complaints the Attorney Gen-

eral had received from former tenants of NALCO. The former tenants alleged that NALCO had unlawfully withheld portions of their security deposits. *Id.* at 1159. NALCO argued that the UTPCPL was unconstitutionally vague because it did not give notice that the retention of escrow funds (security deposits) was prohibited. *Id.* at 1160. The Commonwealth Court held that although "the retention of escrow deposits is not a specifically prohibited act under the [UTPCPL], if such retention is unauthorized and occurs with some frequency, such conduct would be a deceptive act under the definition ... found in Section 2(4)(xiv) ...." (relating to "failing to comply with the terms of any written guarantee or warranty given to the buyer ...." ) *Id.*

¶ 13 In *NALCO,* the Commonwealth Court, in stating that the withholding of security deposits must occur with some frequency, was referring to the fact that NALCO had withheld security deposits from tenants on several occasions. There is, however, no specific requirement in the UTPCPL that instances of unfair or deceptive conduct, to be actionable, occur with "frequency." Thus, we find that the language of *NALCO* to that effect is limited to the facts of that specific case. In the present case, the trial court found that Pastore engaged in a deceptive business practice because he misrepresented the existence and extent of damage to the apartment. Such a misrepresentation is actionable under 73 P.S. § 201–2(4)(xv) of the UTPCPL. Accordingly, we find no merit to Pastore's contention that the UTPCPL does not apply herein.

¶ 14 Pastore next contends that the trial court erred in entering an award of counsel fees in favor of Wallace and Redante because there is no support in the record for such an award. Under section 201–9.2 of the UTPCPL, the court "may award to the plaintiff, in addition to other relief ..., costs and reasonable attorney fees." 73 P.S. § 201–9.2. An award of

attorney's fees under the UTPCPL is within the trial court's discretion. *Sewak v. Lockhart,* 699 A.2d 755 (Pa.Super.1997).

¶ 15 The record shows that counsel for Wallace and Redante gave the court, at the end of trial, a memorandum of law that addressed Wallace's and Redante's entitlement to recovery, *inter alia,* of attorney's fees. N.T., 9/8/98, at 106–10. Counsel indicated that attached to the memorandum was the amount of attorney's fees requested, the number of hours that counsel had devoted to the case, and counsel's hourly rate of billing ($200.00 per hour). *Id.* at 109–10. Counsel asserted that the hourly rate was fair and reasonable for the present case. *Id.* The record also shows that counsel requested attorney's fees in Wallace's and Redante's Motion for Post–Trial Relief.

¶ 16 The record demonstrates that the trial court had before it sufficient information upon which to make a determination of whether Wallace and Redante were entitled to attorney's fees, and the amount of that award. Accordingly, we find no merit to Pastore's second contention on appeal.

∎ ¶ 17 Finally, Pastore argues that the trial court erred in finding that the entire amount of the security deposit was wrongfully withheld. Pastore asserts that Redante admitted at trial that certain of the deficiencies that Pastore had found after Wallace and Redante left the apartment were correct.

∎ ¶ 18 In a bench trial, the trial court is free to believe all, part, or none of the evidence presented, to make all credibility determinations, and to resolve any conflicts in the evidence. *Hodges,* 645 A.2d at 1343. The burden of proof as to actual damages caused by a tenant to the leasehold premises is on the landlord. 68 P.S. § 250.512(c); *Adamsky v. Picknick,* 412 Pa.Super. 544, 603 A.2d 1069 (1992).

¶ 19 Pastore testified that after Wallace and Redante moved out, he inspected the premises. Pastore testified that carpet had been removed, N.T., 9/8/98, at 23, the

medicine cabinet was rusted, *id.* at 26, and that Wallace and Redante left trash outside, *id.* at 28. Pastore indicated that there was a hole in the siding, an oil stain on the porch, *id.,* and the window sills were scratched, *id.* at 32. Pastore stated that Wallace and Redante had started to install tile in back of the stove, but had not finished the job, and he had to find matching tile and finish it. *Id.* at 33–34. Pastore indicated that he had to replace the kitchen floor covering because one tile was missing and he couldn't find a matching tile. *Id.* at 36. Further, Pastore testified that Wallace and Redante had removed the light fixture in the bedroom and put in a new one, leaving a hole from the old fixture. *Id.* at 38. He also found a hole in the living room wall, and had to replace all of the window screens because of holes "from the cat." *Id.* at 40–41. Pastore concluded that the total cost for all repairs, including repairs he had not yet made, and labor, was $4356.45. *Id.* at 45.

¶ 20 Redante testified at trial that she and Wallace did not patch any holes or areas on the walls where there had been picture hooks, *id.* at 96, and that stains on the front porch came from Wallace's motorcycle. *Id.* at 97. Redante also admitted that there were scratches on the wood outside the bedroom, that the oven was not clean, and that there was a missing switchplate when they vacated the apartment. *Id.* at 99. Redante testified, however, that several items that Pastore had cited as damaged were not damaged in fact. She indicated that some of the plant hooks on the ceiling had been left by the previous tenant, *id.* at 80, and that she and Wallace did not leave trash on the premises as Pastore contended, *id.* at 83. Redante also testified that she and Wallace had removed most of the oil stain on the porch. *Id.* at 85. Redante stated that moisture and a lack of ventilation in the bathroom resulted in peeling paint. *Id.* at 87. She also indicated that she and Wallace did nothing extraordinary to cause the rust in the medicine cabinet, *id.* at 88, and that

they did not cause any holes or damage around the bedroom light fixture, *id.* at 92. Redante denied that her cats damaged the window screens. *Id.* at 98. Redante submitted pictures of the condition of the apartment after they had vacated it.

¶ 21 The trial court found that Redante was a credible witness, that Pastore was not credible, and that Pastore had misrepresented the existence and extent of damage to the apartment. *See* Trial Court Opinion, 11/17/98, at 18. The trial court concluded that Wallace and Redante had sustained their burden of proof as to the return of their security deposit, and that there was no merit to Pastore's counterclaim. Our review of the record demonstrates that the testimony at trial supports the trial court's conclusion. As an appellate court, we cannot disturb the finding of the trial court on the witnesses' credibility. *Hodges*, 645 A.2d at 1343. Accordingly, we find no merit to Pastore's contention that the trial court erred in finding that Wallace and Redante were entitled to the entire amount of the security deposit.

¶ 22 Judgment affirmed.