J-A01022-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| MATTHEW HANSEN, ALEC SPERGEL, COLLIN SCHWARTZ AND COREY NORD-PODBERESKY,<br><br>Appellees<br><br>v.<br><br>MICHAEL BUPP,<br><br>Appellant | : IN THE SUPERIOR COURT OF<br>:     PENNSYLVANIA<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: No. 673 WDA 2014 |

Appeal from the Order March 28, 2014,
Court of Common Pleas, Allegheny County,
Civil Division at No. AR 12-001711

BEFORE: FORD ELLIOTT, P.J.E., DONOHUE and ALLEN, JJ.

MEMORANDUM BY DONOHUE, J.:        **FILED FEBRUARY 24, 2015**

Appellant, Michael Bupp ("Bupp"), appeals from the order dated March 28, 2014, denying his motion for post-trial relief and entering judgment in favor of Appellees in the amount of $20,457.25. For the reasons that follow, we affirm.

Appellees are students at the University of Pittsburgh. In March 2012, they entered into a lease agreement with Bupp for the premises at 3602 Dawson Street in the Oakland area near the university campus. The agreed upon rent was $1,995 per month, with rent for the first and last month, along with a security deposit of $1,995, due prior to moving into the residence. Accordingly, Appellees paid Bupp approximately $5,990 in advance of the commencement of the lease. Although the parties agreed

that the lease would begin on the first of August 2012, none of the Appellants moved in until later that month, when Appellee Alex Spergel ("Spergel") arrived on or around August 20, 2012. Spergel immediately identified certain problems with the condition of the residence, including a bath drain, a light, and various locks, and notified Bupp of his concerns in an email.

According to Spergel, Bupp responded to his email with a text message that read, "I cannot deal with your group. Please leave." N.T., 9/10/2013, at 62. Spergel then called Bupp in an attempt to resolve their differences, and at trial he testified regarding that phone call as follows:

> A. … The text seemed to come out of the blue. So I called, and immediately Mr. Bupp seemed very agitated. And after a minute of trying to figure what his problems were, I put my phone on speakerphone. My parents were in the room with me. They were in conference.
>
> And even like once I put it on speakerphone, he started to get more erratic, more agitated; and he started to say profanities. I don't know – can I say what the words were? If you guys don't mind.
>
> [COURT]: Sure.
>
> A. He said, "You fucking assholes. You fucking assholes." And he said it repeatedly, maybe about seven times. And he said, "Get out. Get out, you fucking assholes." And then he hung up.
>
> * * *
>
> Q. During that telephone call you had with Mr. Bupp, did Mr. Bupp make any offer to you to let you and

- 2 -

> your roommates out of the lease you had signed for 3602 Dawson Street?
>
> A.    There was no offer.  He said there were other apartments in Oakland, but there was no distinct offer for us to go to any of those apartments.
>
> Q.    Did he tell you to do anything?
>
> A.    He just said "Get out."
>
>                    *    *    *
>
> Q.    What did you and your roommates do after the communications of that Saturday, August 20th? What did you do in response to Mr. Bupp?
>
> A.    Well, in response, my parents and I, we were the first ones to hear it.  We were obviously taken aback by it.  We had no idea where this had come from. We were honestly a little scared, because here's this man telling us to get out of his house.
>
>    So we obliged him, and I left.  I stayed at a hotel that night here in downtown Pittsburgh at the William Penn.  And I didn't go back until I moved out my stuff.

*Id.* at 62-65.

By letter, Appellees requested that Bupp return the rent and security deposit to them.  By letter dated September 26, 2012, Bupp refused to do so, advising that "I am sorry to inform you that at this time it does not appear that you are entitled to a refund of August Rent or the remainder of the monies that were paid to me." *Id.* at 80 (Exhibit 8).  In his letter, Bupp contended that Appellees had terminated the lease by vacating the premises despite his promises to address the repair concerns.  *Id.*   He further

- 3 -

indicated that during the August 20 telephone call, he had offered to let Appellees out of the lease and to help them locate another apartment , but that his offer had been "firmly rejected." *Id.* Finally, he contended that their failure to advise him that they were breaking the lease resulted in his inability to re-lease the premises sooner in order to mitigate the damages.

> The problem we have now is that you failed to notify me that you were moving. You just moved. If you would have told me prior to August 24 or so that your parents thought that you were not capable of living on your own, I probably could have found someone else to take over your lease.

*Id.*

Appellees filed suit against Bupp for his failure to return their security deposit and rent payments. An arbitration panel entered an award for Appellees, which Bupp appealed. A jury then entered a verdict in favor of Appellees in the amount of $3,990. Following the jury verdict, the trial court received additional evidence on Appellees' claims under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Based upon this evidence, the trial court molded the verdict to add $10,000 in attorneys' fees, $457.25 in costs, and $6,010 in exemplary damages. By order dated March 28, 2014, the trial court denied Bupp's post-trial motions and entered judgment in favor of Appellees in the amount of $20,457.25.

On appeal, Bupp raises seven issues for our consideration and determination:

- 4 -

1.    Did the [c]ourt err, as a matter of law, in finding that [Bupp] made misrepresentations to the Appellee's [sic] regarding the return of their security deposit and retention of prepaid rent when there was no evidence submitted at trial in support of that finding?

2.    Did the [c]ourt err, as a matter of law, in finding that [Bupp] violated Section 201-2(4)(xxi) of the PA UTPCPL, by failing to return Appellee's [sic] security deposit and prepaid rent, notwithstanding [Bupp's] compliance with the requirements of the PA Landlord Tenant Act?

3.    Did the [c]ourt err, as a matter of law, in its reliance on **Wallace v. Pastore**, 742 A.2d 1090 (Pa. Super. 1999) to find that [Bupp] violated Section 201-2(4)(xxi) of the PA Unfair Practices and Consumer Protection Law?

4.    Did the [c]ourt err, as a matter of law, in awarding punitive damages and counsel fees based upon finding that [Bupp] violated Section 201-2(4)(xxi) of the PA Unfair Practices and Consumer Protection Law?

5.    Did the [c]ourt err, as a matter of law, in the denial of all of [Bupp's] requested jury instructions, other than boilerplate standard jury instructions?

6.    Did the [c]ourt err, as a matter of law, in instructing the jury on the law with respect to the provisions of the Landlord Tenant Act and under what circumstances a security deposit and the amount thereof must be returned by a landlord, and under what circumstances a tenant may be entitled to double the security deposit?

7.    Did the [c]ourt err, as a matter of law, in its response to an inquiry of the jury, during deliberation, as to under what circumstances double the security deposit is payable?

Bupp's Brief at 4.

Our standard of review from the denial of post-trial motions seeking a new trial or judgment notwithstanding the verdict is as follows:

> "Our standard of review [of an order] denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion." ***Angelo v. Diamontoni***, 871 A.2d 1276, 1279 (Pa. Super. 2005), *appeal denied*, 585 Pa. 694, 889 A.2d 87 (2005) (citation omitted). Similarly, Appellant sought post-trial relief in the nature of a motion for JNOV, which requires us to "consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict." ***Wilson v. Transport Ins. Co.***, 889 A.2d 563, 569 (Pa. Super. 2005). If there is any basis upon which the trial court could have properly made its award, we must affirm its subsequent denial of the motion for JNOV. ***Id.*** "A JNOV should be entered only in a clear case." ***Id.***

***Christian v. Yanoviak***, 945 A.2d 220, 225 (Pa. Super. 2008).

We will address Bupp's first four issues together, as they all rely upon the same premise, namely that he did not violate the UTPCPL, 73 P.S. § 301-1 et seq.[1] Bupp contends that Appellants "offered no evidence that supports the contention that Bupp made misrepresentations to [Appellants] that could in any manner be construed as fraudulent or deceptive." Bupp's Brief at 13. Bupp further argues that Appellants "have offered nothing to suggest that Bupp represented he would make repairs and failed to make such repairs," and that the "uncontroverted testimony at trial" reflects that

---

[1] Bupp's second issue on appeal also refers to his compliance with the Landlord Tenant Act, which we will discuss in connection with his sixth and seventh issues.

Appellants "were substantially satisfied with the apartment on August 20, 2012, having moved in with no express intention of vacating ...." *Id.* at 12.

In **Wallace**, this Court described the law relating to the application of the UTPCPL in landlord-tenant matters as follows:

> The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by ... section 2 of this act...." 73 P.S. § 201-3. Unfair or deceptive acts or practices, under section 2 of the UTPCPL, include, inter alia, the following:
>
> > (xv) knowingly misrepresenting that services, replacements or repairs are needed if they are not needed....
>
> 73 P.S. § 201-2(4). A person who leases or purchases goods or services "primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property ... as a result" of an unfair or deceptive practice under the UTPCPL, may bring a private action to recover those damages, and the court may, in its discretion, "award up to three times the actual damages sustained." 73 P.S. § 201-9.2(a).
>
> The UTPCPL must be liberally construed to effect the law's purpose of protecting consumers from unfair or deceptive business practices. **Commonwealth v. Monumental Properties, Inc.**, 459 Pa. 450, 329 A.2d 812 (1974). The Pennsylvania Supreme Court has held that the UTPCPL applies to the leasing of residences. **Id.** (stating that the modern apartment dweller is a consumer of housing services). In addition, the remedies of the UTPCPL are not exclusive, but are in addition to other causes of action and remedies. **Gabriel v. O'Hara**, 368 Pa. Super. 383, 534 A.2d 488, 495 & 495 n. 22 (1987); **see also Johnson v. Hyundai Motor Am.**, 698 A.2d 631, 637 (Pa. Super. 1997) (stating that a

> violation of the Pennsylvania Lemon Law, 73 P.S. §§ 1952-63, was also a violation of the UTPCPL in an action brought under both statutes for damages arising from a defective vehicle).

*Wallace*, 742 A.2d 1090, 1092-93 (Pa. Super. 1999).

In *Wallace*, a landlord refused to return a tenant's security deposit, claiming that the tenant had caused thousands of dollars in damages upon vacating the premises. *Id.* at 1091-92. Following a bench trial, the trial court awarded the tenant his security deposit and, pursuant to the UTPCPL, treble damages, attorneys' fees, and costs of suit. *Id.* In so doing, the trial court concluded that the landlord's representations regarding necessary repairs violated section 201-2(4)(xv) ("Knowingly misrepresenting that services, replacements or repairs are needed if they are not needed") of the UTPCPL. This Court affirmed.

We agree with Appellants that the clear holding of *Wallace* is that where it is shown that a landlord wrongfully withholds a security deposit in a manner that constitutes an "unfair trade practice," as that term is defined in the UTPCPL, the tenant is entitled to damages under the UTPCPL.[2] In this

---

[2] Bupp attempts to distinguish *Wallace* on its facts, arguing that in this case he made no misrepresentations regarding damages to the apartment, and thus no violation of section 201-2(4)(xv). Bupp cites to no authority, however, to support his contention that *Wallace* should be construed as limiting the availability damages against a landlord to violations of section 201-2(4)(xv). Nothing in our decision in *Wallace*, or in subsequently decisions affirming and applying its directives, establishes or even suggests that a landlord's liability under the UTPCPL is limited to violations of section

case, the trial court correctly so interpreted our holding in *Wallace* and found that Bupp's September 26, 2012 letter contained multiple misrepresentations in violation of the "catch-all" portion of the UTPCPL's definition of "unfair trade practices" in section 201-2(4)(xxi) ("Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.").

Bupp's contention that Appellants did not introduce any evidence to support the contention that he made any statement that "could in any manner be construed as fraudulent or deceptive," Bupp's Brief at 13, borders on frivolity. For just a few examples, Spergel's testimony (which Bupp neither mentions nor discusses in his appellate brief) provides evidence that the representations in Bupp's September 26 letter justifying his refusal to return the security deposit and prepaid rent were the result of **Appellees'** breach of the lease were patently false. Spergel's testimony, which the jury and the trial court obviously found to be credible, establishes that it was **Bupp** who terminated the lease, as (during the August 20 telephone conversation) Bupp repeatedly demanded that Appellees "get out." N.T., 9/10/2013, at 62-65. Moreover, Spergel's testimony also established that Bupp's representation that he offered to allow Appellants to terminate the lease and/or move into another nearby apartment was likewise false. *Id.*

---

201-2(4)(xv), as opposed to any other type of unfair trade practice (including but not limited to those as defined in section 201-2(4)(xxi)).

Finally, Bupp's representation that he was unaware of Appellants' departure from the apartment was likewise fraudulent and deceptive, as he had just ordered them to leave in an expletive laden outburst. *Id.*

In *Wallace*, this Court approved an award of attorneys' fees on a rate of $200 per hour. *Wallace*, 742 A.2d at 1094. In this case, Appellants presented evidence that their attorneys' fees, computed at a rate of $200 per hour, were approximately $20,000. The trial court, exercising its discretion after reviewing counsel's billings, awarded only $10,000 in attorneys' fees. On appeal, Bupp does not contest the calculation of the amount of attorneys' fees awarded (or the amount of costs, which the trial court also limited to essential items). Accordingly, we conclude that the trial court did not err in its decision to mold the jury's verdict to include damages properly assessed under the UTPCPL, and that as a result Bupp is not entitled to any relief on his first four issues on appeal.

For his fifth issue on appeal, Bupp argues that the trial court's jury instructions regarding the obligations of landlords under Pennsylvania's Landlord Tenant Act with regard to the return of security deposits constituted error. In particular, Bupp contends that the trial court erred in instructing the jury that it was a violation of the Landlord Tenant Law for Bupp to withhold the security deposit if Appellees caused no damage to the leased property. Bupp's Brief at 21. According to Bupp, this misrepresents the landlord's obligations under that statute, since a landlord may also

withhold a security deposit "for nonpayment of rent or for the breach of any other condition in the lease by the tenant." *Id.*; 68 P.S. § 250.512(a).

A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. *McManamon v. Washko*, 906 A.2d 1259, 1271 (Pa. Super. 2006). We need not determine whether the trial court's charge to the jury here was in error, since even if it was incomplete in the manner suggested by Bupp, he has not established that he suffered any prejudice as a result. Bupp could not have withheld the security deposit in this case based upon the nonpayment of rent, as there is no allegation that Appellees failed to pay all rent due under the lease. Moreover, the evidence (as reviewed hereinabove) provided the jury with ample basis to conclude that it was Bupp, and not Appellees, who breached the lease agreement. As a result, Bupp has not established any prejudicial effect from the trial court's alleged failure to inform the jury that Bupp's refusal to return the security deposit was justified if Appellees breached the provisions of the lease – since the jury clearly determined that Appellees did not breach the lease. We decline to grant a new trial on this basis.

For his sixth issue, Bupp contends that the trial court improperly instructed the jury with regard to an exception to a landlord's obligation to return a security deposit if the tenant does not leave a forwarding address. Bupp's Brief at 22. At trial, Bupp initially requested that the jury be

instructed merely by reading section 250.512(e) of the Landlord Tenant Act.[3] *Id.* The trial court, after a discussion with counsel, indicated that it considered this limited instruction to be misleading, as it suggested that section 250.512(e) should not be considered "like a lottery" for landlords. N.T., 9/10/2013, at 189. In response, counsel for Bupp responded "I have no problem with that." *Id.* at 190.

Because Bupp did not assert a clear objection to the trial court's instruction on this issue, we conclude that the issue was not adequately preserved for appeal. *See, e.g.*, *City of Philadelphia, Police Dep't v. Gray*, 534 Pa. 467, 475, 633 A.2d 1090, 1094 (1993). Moreover, even if not waived, Bupp has not established that he suffered any prejudice as a result of the trial court's reference to a "lottery". We note that the trial court also specifically advised the jury that counsel for Bupp "has raised an issue" regarding the reading of section 251.512(e), and stated:

> His concern is that maybe I had confused you by talking about the security deposit and pointing out that the security deposit – if there is no claim to it, it's not a lottery; and he can't keep it. But certainly if you find – dependent on what you find, it may very well be used for unpaid rent.

---

[3] Section 250.512(e) provides that the "failure of the tenant to provide the landlord with his new address in writing upon termination of the lease or upon surrender and acceptance of the leasehold premises shall relieve the landlord from any liability under this section." 68 P.S. § 250.512(e).

N.T., 9/10/2013, at 227. As such, the trial court explained his "not a lottery" instruction to the jury, and Bupp raised no objection to this clarification. No relief is due.

For his seventh and final issue on appeal, Bupp argues that the trial court improperly responded to a question from the jury during its deliberations. The jury asked "could we please have clarification about the double-security deposit," N.T., 9/10/2013, at 234. Counsel for Bupp contended that the relevant statutory provisions (sections 250.512(a) and (c) of the Landlord Tenant Act) provide that a tenant is entitled to receive in damages an amount double the amount of his security deposit only if the landlord fails to advise the tenant of the reasons for withholding said security deposit. *Id.* at 236. The trial court disagreed, emphasizing that the landlord must do more than offer a basis for the withholding, and must instead offer a "lawful" basis for doing so. *Id.*

We decline to grant any relief on this basis, again based upon a lack of prejudice. The trial court offered the following cogent rejection of Bupp's contentions in this regard:

> Initially, the verdict winner is entitled to every reasonable inference from the evidence. Here, while it is said that I confused the jury, I do not see it. The amount of the verdict need not be parsed. The defense, I believe, is trying to say the $3,990 represents doubling of the security deposit which, according to him, Bupp could have withheld against rent owed. But, that was only his defense and the jury didn't believe it. Had they believed Bupp was

- 13 -

> due rent, they would have so found. They did not.
> Thus, they were not confused and simply gave Bupp
> a credit for August, the first month of the lease in
> which there was no occupance and refunded
> [Appellees] the money they had put up as the last
> months rent and the security deposit, **NOT** doubled.
> I don't think they were confused at all and the
> motion is DENIED.

Trial Court Opinion, 3/28/2014 (emphasis in original). In the absence of any reason to believe that the jury was confused by the trial court's response to their inquiry and granted a double security deposit award (while declining to award Appellees any amount for the return of prepaid rent), Bupp has not established any prejudice requiring relief therefrom.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2015

- 14 -