J-A20017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CINDY EMONDI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| T & G CAR SALES, LLC | : | |
| | : | |
| Appellant | : | No. 1719 MDA 2018 |

Appeal from the Judgment Entered January 17, 2019
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  14-960

BEFORE:  GANTMAN, P.J.E., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED FEBRUARY 11, 2020**

T & G Car Sales, LLC ("T & G"), appeals from the judgment entered in favor of Cindy Emondi following the trial court's finding that T & G violated the Unfair Trade Practices Consumer Protection Law ("UTPCPL"). T & G argues, *inter alia*, that the trial court erred in concluding Emondi established the element of justifiable reliance. We reverse.

This case centers on Emondi's allegations that T & G misrepresented the condition of a car that had significant engine problems, and these misrepresentations caused her to unknowingly purchase a defective car. Emondi alleged that in so doing, T & G violated the UTPCPL, which prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.[]" 73 P.S. § 201-3. Emondi alleged that T & G violated the UTPCPL in two ways: (1) "Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular

style or model, if they are of another," and (2) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §§ 201-2(4)(vii), (xxi). Emondi also alleged T & G had violated the statute by violating a regulation barring

> [t]he making of a representation or statement of a fact in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading or if the advertiser or salesperson does not have sufficient information upon which a reasonable belief in the truth of the representation could be based.

37 Pa. Code § 301.2(6); 73 P.S. § 201-3.1.

Following a bench trial, the trial court found as follows. In March 2013, Emondi was looking to buy a car. Trial Court Opinion, filed February 8, 2019, at 3. Emondi approached Eddie Albright, whom she knew from school, the lone salesperson for T & G and the son of its owner. *Id.*; N.T. (Trial), 5/30/17, at 58. Albright showed Emondi a used BMW that he said was in "good condition," "seems good," and would fit Emondi's need for reliable transportation. Tr. Ct. Op. at 3 & n.16. Albright told Emondi the car was "a good running car" that "would last for awhile [sic]." *Id.* at 3 n.16.

Emondi introduced into evidence the bill of sale, titled, "Used Vehicle Order" ("UVO"). *See* N.T. at 64; Plaintiff's Ex. 1. The UVO included a box, marked with an "X," next to the following statement:

> SOLD WITH WARRANTY. We the dealer warranty this vehicle for 30 Days after delivery on a retail basis of parts and labor used. (Owner pays 50% and dealer pays 50% of total retail cost of parts and labor used.) All repairs must be made in our service shop or

shops authorized by dealer herein named. A full copy of the written warranty may be obtained.

Plaintiff's Ex. 1 (emphasis in original).

The bottom portion of the UVO stated, "I have read the face and back of this order, and agree to this purchase contract." *Id.* The reverse side of the UVO stated, "All promises, statements, understandings or agreements of any kind pertaining to this contract not specified herein are hereby expressly waived." *Id.* at 2, ¶ 3. Both parties signed the UVO. *Id.* at 1.

Approximately six months after the purchase, Emondi took the car to get an oil change and inspection at CR's Motor Car Co. Inc. ("CR's Motor"). *Id.* at 4. Thereafter, Emondi noticed the heater did not function and took the car back to CR's Motor, which was unable to fix the heater. *Id.* at 4 & n.22.

Approximately one month later, Emondi took the car to another mechanic to have the heater fixed. The mechanic, who testified at trial as an expert witness, diagnosed the car "with having a bad gasket, cracked or warped head, or a cracked or warped engine block." Tr. Ct. Op. at 4; *see also* Plaintiff's Ex. 9. He told Emondi that the engine would need extensive repair work, and recommended that she have the engine replaced. Tr. Ct. Op. at 4. He cautioned Emondi that without these repairs, the car was in a dangerous driving condition. *Id.*

He also told Emondi that he recognized her car as the same one that had been brought to him in January of that year, and that it had exhibited the same problems at that time. *Id.* When the mechanic told the previous owner

of the engine problems, the owner replied that the car "would be traded."[1] ***Id.*** Emondi stopped driving the car. N.T. at 81-82. By that time, she had driven it approximately 8,000 miles. ***Id.*** at 93-94.

Emondi confronted Albright, threatening legal action. Tr. Ct. Op. at 4-5. The parties eventually arranged to meet, with their attorneys, at Emondi's home to collect an odometer reading from the car. ***Id.*** at 5. Two hours prior to the arranged meeting time, Emondi discovered two T & G agents in her driveway—one looking under the hood of the car, and the other seated in the passenger compartment. ***Id.***; N.T. at 77. Emondi's neighbor also testified to seeing the two men in Emondi's driveway, one sitting in the car, while the car's hood was up. N.T. at 53-54. Once everyone else arrived, they turned on the car and read the odometer. Tr. Ct. Op. at 5.

Emondi took the car back to the shop, where the mechanic determined that it was no longer displaying the previous engine problems. ***Id.*** at 5-6. He told Emondi, and testified at trial, that the engine could not have recovered in this manner unless a sealant had been added to the cooling system as a temporary fix. ***Id.*** at 6. He was unable to confirm a sealant had been added, as some sealants are colorless. ***Id.***

---

[1] Emondi introduced into evidence the receipt describing the engine problem which Forest Hill had given to the previous owner on January 26, 2013. ***See*** N.T. at 24; Plaintiff's Ex. 10. The receipt listed the same VIN as is listed on the paperwork related to Emondi's purchase of the car. ***See*** Plaintiff's Ex's. 1, 2, 3, and 5.

Emondi argued that Albright had represented that he was selling her a good, reliable car, even though he had not performed an inspection to verify its roadworthiness, and that the car was not roadworthy at the time she purchased it. N.T. at 205-08. In addition, Emondi asserted that T & G agents had surreptitiously added sealant to the engine on the day she found them in her driveway, in an effort to mask the engine defect, and that T & G had similarly added sealant to the engine before selling the car to her.

Emondi sought compensation for the cost of a replacement engine, and introduced evidence that it would cost $8,876.34. **See** Tr. Ct. Op. at 4 n.26; N.T. at 24-25; Plaintiff's Ex. 11. Emondi also sought reimbursement for the interest she had paid on her auto loan, and introduced a document stating she had paid $6,369.84 of finance charges. **See** Tr. Ct. Op. at 12 n.54; Plaintiff's Ex. 7. She requested reimbursement for her insurance premiums, and testified that she paid $548.50 every six months for insurance. **See** Tr. Ct. Op. at 3 n.19; N.T. at 88. Emondi also introduced the auto repair bills she received from Forest Hill, totaling $659.50, and CR's Motor, totaling $239.56. **See** Tr. Ct. Op. at 12; Plaintiff's Ex.'s 6, 9-12.

Albright testified that T & G had purchased the car at an auction in early March 2013, and the seller had represented to T & G that the car was in "sound" condition. Tr. Ct. Op. at 6.[2] T & G did not conduct its own inspection

_____

[2] T & G introduced the bill of sale documenting Albright's purchase of the car at auction. The agreement included an "AS IS" box, which was not checked.

prior to or after purchasing the car, but Albright test-drove the car for 70 miles, and found it to be working properly. *Id.* at 6 & n.43; N.T. at 117, 121. Albright testified that he believed the car to be in fit condition when he sold it to Emondi. N.T. at 121-22. T & G introduced a rebuttal expert witness, the mechanic from CR's Motor, who testified that the car did not have an engine problem. Tr. Ct. Op. at 4 n.24. T & G also introduced Michael Shatzer, who testified that when he and another T & G agent arrived at Emondi's home to take the odometer reading, Emondi came outside to wait on the porch, and her attorney arrived within a few minutes. N.T. at 188. Shatzer stated the T & G agents were not two hours early, only stayed for 15 minutes, and did not add anything to the engine. *Id.* at 189.

T & G argued that Albright had not misrepresented the condition of the car, because the car was roadworthy, and that, even if it was not, it was roadworthy at the time of sale, and had presented no alleged problems until 8 months and 8,000 miles after the sale. T & G denied that it had masked any engine problems either before or after the sale to Emondi. T & G also argued that because Emondi had only a 30-day warranty, "to hold [it] responsible for any of the costs that might occur after that warranty would largely turn the entire auto industry on its head." N.T. at 12. T & G asserted that if auto dealers were held responsible for claims arising past the warranty, they "would

_____

Instead, the box marked "SOUND" was checked. Next to this box, the bill of sale stated, "This vehicle is sold 'sound,'" and "[i]t should not have any drive train defect that will cost more than $1000 to repair[.]" Defendant's Ex. 1.

essentially be responsible for their vehicles for however many miles the purchaser thinks they should last and that is not reasonable and not something [T & G] should be held to." *Id.*

The trial court found that T & G engaged in deceptive conduct as defined by section 202-2(4)(xxi) of the UTPCPL and 37 Pa.Code. § 301.2(6).[3] Tr. Ct. Op. at 8. The court found that Albright "admitted that he made no inspection of the car prior to or after purchasing it in order to ensure that the representations he made to [Emondi] were accurate," and that he told Emondi "that the car was a good, reliable car despite having (at best) no information or (at worst) contrary information as to the quality of the car." *Id.*

The court concluded that Emondi justifiably relied on Albright's assurances, because Emondi had an existing relationship with Albright and had specifically sought him out "to get a good running car." *Id.* at 9 (citing N.T. at 57-90). The court also found that as T & G is in the business of selling cars, and Albright is the only salesperson on the car lot owned and operated

_____

[3] The court's order announcing the verdict stated that on Count 1, it found by a preponderance of the evidence that:

> . . . [Emondi] and [T & G] were involved in a commercial relationship as buyer and seller of a car used for a household purpose, that [T & G] misled [Emondi] during their dealings with respect to the quality and reliability of the car, knowing that [Emondi] may rely on his representations, that [Emondi] justifiably relied on those base representations and bought the car and suffered damages as a result.

Order, 9/14/18, at 1 ¶ 1. The court's Rule 1925(a) opinion, which addressed T & G's challenges to the sufficiency and weight of the evidence, further clarified its findings.

by his family, and has "over thirty years' experience in the car business and considers himself a 'sometime mechanic,'" Albright had an obligation to refrain from making misrepresentations to consumers looking to purchase cars. *Id.* at 9-10. The court found Emondi had no duty to conduct a private inspection of the vehicle in order to prove justifiable reliance, as this holding "would place undue burden on the consumer to protect themselves from the negligence or malfeasance of the seller, which is precisely the conduct that the UTPCPL was enacted to curtail." *Id.* at 9.

The court rejected T & G's argument that Emondi was not justified in relying on Albright's statements because she purchased a 30-day warranty. It stated, "[c]onsumers are not required under the law to take every possible measure to combat misrepresentations of the seller," and pointed out that the problem with the vehicle's engine did not become apparent until after the warranty had expired. *Id.* at 9-10. The court also found that Emondi had established the element of causation, because the evidence reflected that she purchased the car based on T & G's representations that the car was suitable and in good condition. *Id.* at 10.

The court awarded Emondi damages on the UTPCPL claim "in the amount of $12,000.00 (representing actual damages to [Emondi] to repair the faulty mechanics of the car and a partial award of other costs)." Order, 9/17/18, at 1, ¶ 1. The court found in favor of T & G on the counts for fraudulent misrepresentation and fraudulent concealment. *Id.* at 1-2, ¶ 2. T

& G filed a motion for post-trial relief, which the court denied. The court entered judgment on the docket, and T & G appealed.[4]

> T & G raises the following issues:
>
> I. Whether the trial court committed an error of law and abused its discretion by entering judgment in favor of [Emondi] under the [UTPCPL] where [Emondi] failed to carry her burden of proof and the trial court lacked competent evidence to support its conclusion that T & G engaged in fraudulent or deceptive conduct creating a likelihood of confusion and misunderstanding, which are required to establish a right to relief under the UTPCPL.
>
> II. Whether the trial court committed error of law and abused its discretion by holding that [Emondi] proved justifiable reliance and causation, critical elements for relief under the UTPCPL where substantial record evidence established that the alleged problems with the vehicle arose after more than 8,000 miles of driving by [Emondi] and were not due to the condition of the vehicle at the time of sale and misrepresentation by T & G.
>
> III. Whether the trial court erred as a matter of law and abused its discretion by awarding $12,000 in damages representing "actual damages . . . and a partial award of other costs" where [Emondi] failed to produce evidence corroborating the damages figure and the term "other costs" was never defined.

T & G's Br. at 2-3 (suggested answers omitted).

We address only the second issue, as it is dispositive. T & G argues that Emondi failed to establish she justifiably relied upon Albright's assessment of the condition of the vehicle, because she purchased the vehicle with a 30-day

---

[4] T & G filed notice of appeal prematurely, while the post-trial motions were still pending before the trial court. As judgment has since been entered on the docket, the appeal has been perfected. **See** Pa.R.A.P. 905(a)(5).

warranty and did not make a claim during that time.[5] T & G claims that because of the warranty, Emondi could not have justifiably relied on any representations made as to the vehicle's fitness after 30 days.[6]

In reviewing this case, we are mindful that we are to construe the provisions of the UTPCPL liberally, in order to effect the goal of protecting the public of unfair or deceptive business practices. *See Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa.Super. 2012). Moreover, we will only reverse the decision of a trial court following a non-jury trial if the court's findings "are predicated on an error of law or are unsupported by competent evidence in the record." *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 321 (Pa.Super. 2015) (quoting *Wallace v. Pastore*, 742 A.2d 1090, 1092 (Pa.Super. 1999)).

In addition to other elements,[7] an individual seeking relief under the UTPCPL must establish the elements of justifiable reliance and causation.

---

[5] T & G also argues that Emondi declined an extended warranty. T & G's Br. at 15. The trial court noted that Emondi disputed this claim, and testified that she was never offered an extended warranty. Tr. Ct. Op. at 6 n.45.

[6] Due to our disposition, we need not address the following arguments that T & G also lodges under this heading: (1) Emondi failed to establish she justifiably relied upon Albright's statements because she did not opt to have the vehicle independently inspected, and (2) Emondi failed to prove causation, because T & G did not misrepresent the condition of the car.

[7] A private individual seeking relief under the UTPCPL must prove "1) the defendant was engaged in unfair methods of competition and unfair or deceptive acts or practices, and 2) the transaction between plaintiff and defendant constituted 'trade or commerce' within the meaning of the UTPCPL."

*Kirwin v. Sussman Auto.*, 149 A.3d 333, 336 (Pa.Super. 2016); *Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1289 (Pa.Super. 2015). These requirements arise from the text of the UTPCPL. *See* 73 P.S. § 201–9.2 (providing the right to a private action to any person who "suffers any ascertainable loss . . . as a result of" the unfair methods of competition and unfair or deceptive acts or practices); *Kern*, 108 A.3d at 1289-90; *Schwartz v. Rockey*, 932 A.2d 885, 898 n.16 (Pa. 2007).[8]

A plaintiff asserting a UPTCPL claim cannot prove justifiable reliance upon representations made prior to the entry of a contract, if that contract addressed the subject matter of the misrepresentations and contained an integration clause. In such a case, the terms of the contract supersede all previous representations and agreements and preclude a finding of justifiable reliance. *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 439 (Pa. 2004).

_____

*Fazio v. Guardian Life Ins. Co. of Am.*, 62 A.3d 396, 409 (Pa.Super. 2012) (quoting *Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 646-47 (Pa.Super. 1999)); *see also* 73 P.S. § 201-3. The plaintiff must also establish:

> 1) that he or she is a purchaser or lessee; 2) that the transaction is dealing with "goods or services"; 3) that the good or service was primarily for personal, family, or household purposes; and 4) that he or she suffered damages arising from the purchase or lease of goods or services.

*Fazio*, 62 A.3d at 409 (quoting *Keller*, 733 A.2d at 646-47).

[8] These elements were not affected by the 1996 amendments to the UTPCPL. *See Kern*, 108 A.3d at 1289.

In *Yocca*, the plaintiffs purchased the right to buy annual season tickets to see the Pittsburgh Steelers, after receiving a brochure that included diagrams showing seat locations. *Id.* at 427-29. However, the plaintiffs each signed an agreement – a "stadium builder license" ("SBL") – that described the location of the seats. The SBL included an integration clause. *Id.* at 430-31. The plaintiffs brought suit under the UTPCPL asserting they were misled by the seating diagrams. *Id.* at 431-32. The Supreme Court held the plaintiffs could not establish they justifiably relied on the diagrams due to the subsequent, integrated SBL agreement, which addressed the seat locations, and which the plaintiffs did not claim was misleading. *Id.* at 439. The Court explained that "by signing the SBL Agreement, which contained an integration clause stating that the terms of the SBL Agreement superseded all of the parties' previous representations and agreements, [the plaintiffs] explicitly disclaimed reliance on any such representations." *Id.*[9, 10]

---

[9] Although, in *Yocca*, the parol evidence rule was not at issue in connection with the UTPCPL claims, the Court held the plaintiffs could not establish justifiable reliance on their UTPCPL claims "given this Commonwealth's adoption of the parol evidence rule." *Yocca*, 854 A.2d at 439. The Court also noted that "the law is not completely settled as to whether an SBL constitutes either a good or a service." *Id.* at 438.

[10] *See also Kirwin*, 149 A.3d at 337 (finding plaintiff could not have justifiably relied on advertised sales price of vehicle because plaintiff was aware of the price difference prior to signing the sales contract); *but see Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 206-08 (Pa. 2007) (distinguishing between fraud in the execution claims, as actionable under the UTPCPL notwithstanding an integration clause, and fraud in the inducement claims); *Boehm*, 117 A.3d at 325-27 (same).

Here, Emondi claimed she relied upon Albright's statements regarding the fitness and longevity of the vehicle, that these statements induced her to buy the car, and that she suffered harm when she later discovered the car had severe engine problems. However, Emondi signed a contract stating T & G only warranted the fitness of the car for 30 days following the sale, and that the contract superseded any previous "promises, statements, understandings, or agreements of any kind[.]" Plaintiff's Ex. 1 at 2, ¶ 3.

Thus, the contract was integrated, and it specifically addressed the seller's responsibility regarding the fitness of the vehicle. As a matter of law, Emondi cannot have established that she justifiably relied on Albright's statements that the car "would last for awhile [sic]." Tr. Ct. Op. at 3 n.16; *Yocca*, 854 A.2d at 439. Because Emondi's claim is premised on representations made before she entered a contract that specifically disclaimed any warranty after 30 days, her claim must fail, and the trial court erred in finding in her favor.

Judgment reversed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/11/2020