J-S39015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALEX H. PIERRE, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| MP CLOVERLY PARTNERS, LP, | | |
| Appellee | | No. 1677 EDA 2014 |

Appeal from the Judgment Entered April 29, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): February Term, 2012, No. 1903

| | | |
|---|---|---|
| ALEX H. PIERRE, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| POST COMMERCIAL REAL ESTATE, ET AL. | | |
| Appellee | | No. 1678 EDA 2014 |

Appeal from the Judgment Entered April 29, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): December Term, 2010, No. 384

BEFORE: BOWES, OTT AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.: **FILED SEPTEMBER 08, 2015**

In these consolidated appeals, Alex H. Pierre, Esquire,[1] appeals from the judgment entered on the verdict in his favor in the amount of $415 against MP Cloverly Partners, L.P. ("Cloverly") individually for breach of contract and in the amount of $200 against Cloverly and Post Commercial Real Estate Corporation ("Post") collectively for their violation of the Landlord Tenant Act.[2]   Appellant asserts that the damage awards are inadequate and challenges the defense verdicts in favor of Nancy Wasser, Esquire, Cloverly, and Post (collectively referred to as "Appellees"), as to his remaining counts of tortious interference with a contract and an alleged violation of the Unfair Trade Practices and Consumer Protection Law (the "consumer protection law"), respectively.   Appellant filed with this Court an application for leave to substitute his certificate of compliance pursuant to Pa.R.A.P. 2135(d).  We deny Appellant's application, and affirm.

Commencing in 1993, Appellant rented an apartment at 437 West School House Lane in Philadelphia.  Cloverly purchased the building and

---

[1] Appellant, who appeared *pro se* throughout these proceedings, was suspended from practicing law in Pennsylvania prior to the date he initiated the original lawsuit and his license had not been reinstated as of the date of the jury trial.

[2] Although the *praecipe* to enter judgment on the verdict misstates the amount of the jury award as $600, the certified record confirms that the verdict was for $615.  Specifically, the jury awarded Appellant $415 damages for the breach of contract committed by Cloverly and $200 damages for Post and Cloverly's violation of the Landlord Tenant Act.

began renovations during 2008. Cloverly designated Post as its agent and property manager for the building. Appellant failed to pay his rent for July, August, and September of 2008. Cloverly subsequently filed for an eviction in the landlord-tenant division of Philadelphia Municipal Court. During those proceedings, Attorney Wasser represented Cloverly.

The municipal court found in Cloverly's favor and awarded Cloverly possession of the premises. However, the municipal court prohibited Cloverly from beginning eviction proceedings before November 30, 2008 and entered a judgment in Appellant's favor for abated rent. Appellant failed to appeal this ruling, and on November 6, 2008, Cloverly filed a writ of possession. Appellant was served with this writ on November 13, 2008. The next day, Appellant sent a money order for the November rent to Post at its corporate office. On November 17, 2008, Appellant submitted two additional money orders to Post, which he later testified were intended to be his rental payments for December 2008 and January 2009. Post accepted the payments but failed to inform either Cloverly or Attorney Wasser that they had been received.

Meanwhile, on November 21, 2008, Attorney Wasser signed and filed the writ of possession for the unit. As a result, Post evicted Appellant from his apartment on December 8, 2008. Though the Philadelphia County Sheriff, who was present to assist with the eviction, had informed Appellant that he had one hour (until 1:00 p.m.) to gather his belongings and leave

- 3 -

the premises, Post representative Dawn Rodgers gave Appellant until five p.m. to remove what he could. Ms. Rodgers also returned the money order for the January 2009 rental payment. Appellant removed some of his property from the apartment on the date of the eviction but failed to attempt to retrieve any more of his possessions until January 8, 2009.

Appellant commenced his original action on December 7, 2010, by filing a complaint against Post, Attorney Wasser, and her law firm Nancy Wasser and Associates (the "law firm"). He raised the following claims: (1) breach of contract against Post; (2) tortious interference with contract against Attorney Wasser and the law firm; (3) violation of Philadelphia Code against all defendants; (4) wrongful use of civil proceedings against Post, Attorney Wasser, and the law firm; and (5) abuse of process against Post, Attorney Wasser, and the law firm. Appellant subsequently requested leave to amend his complaint to add, *inter alia*, Cloverly as a defendant so that he could assert claims against it for breach of contract, unfair trade practices, and a violation of the Landlord Tenant Act. His amended complaint also sought to add the following factual allegations: (1) that Post had acted as Cloverly's agent; (2) that Nancy Rodgers and Attorney Wasser had acted as Post's agents; and (3) that after his eviction, he had contacted both Ms. Rodgers and Attorney Wasser in order to find out when he could remove his remaining property from the apartment. Lastly, Appellant desired to add claims against Appellees sounding in fraud, conversion, fraudulent

misrepresentation, negligent misrepresentation, negligence, and unfair trade practices. The motion was denied, and on July 21, 2011, Post, Attorney Wasser, and the law firm filed a motion for judgment on the pleadings, which the trial court granted, and dismissed Appellant's claims with prejudice on August 26, 2011.

This Court affirmed in part, reversed in part, and remanded for further proceedings. *Pierre v. Post Commercial Real Estate*, 64 A.3d 290 (Pa.Super 2013) (unpublished memorandum). Specifically, we held that the trial court erred in failing to permit Appellant to amend the complaint to add breach of contract, unfair trade practices, and a violation of the Landlord Tenant Act against Cloverly. We also concluded that the trial court erred in barring factual allegations that Ms. Rodgers and Attorney Wasser were agents of Post and that Post was an agent of Cloverly. Thus, we vacated the order granting judgment on the pleadings and reversed the order denying Appellant's leave to amend. We directed that, upon remand, Appellant could file an amended complaint adding Cloverly as a defendant in the case against Post, Attorney Wasser, and the law firm and to add the above referenced allegations of agency. However, having found that Appellant's proposed revisions for claims sounding in fraud, negligence, conversion, and wrongful retention of property were barred by the statute of limitations, we denied these amendments. We also affirmed the trial court's decision to preclude as time barred the claims that Cloverly and Post wrongfully

retained his personal property. None of the parties filed a petition for an allowance of appeal.

Prior to the ensuing jury trial against Appellees, on September 16, 2013, a motions court granted Appellant's motion for partial summary judgment. It found, as a matter of law, that a new contract existed between Appellant and Cloverly covering November and December 2008 and that Cloverly breached the agreement by executing the writ of possession that it obtained in the interim. The jury trial began on November 22, 2014. Appellant leveled four claims against Appellees. The first claim was that Cloverly had breached its contract with him and the second one was that Cloverly and Post had violated the Landlord Tenant Act as a result of his eviction on December 8, 2008. His third claim was against Attorney Wasser for tortious interference with the contract between Cloverly and himself, which he asserted existed as a result of Post's acceptance of the rental payments for November and December 2008. Finally, Appellant accused all of the Appellees of violating the consumer protection law.

An eight-member jury panel, with two alternates, originally convened. However, the court excused one alternate prior to the start of testimony due to a scheduling conflict with her daughter's graduation. No evidence was admitted on November 27, 2013, the third day of trial, because Appellant failed to report to court after allegedly being struck by an automobile on his way to the courthouse. On the same day, two more jurors were dismissed.

Although those dismissals were not immediately noted on the record, the trial court brought attention to the reduction in open court at the beginning of the resumption of Monday's testimony on December 2, 2013.[3]  **See** N.T., 12/2/13, at 7.  Significantly, Appellant did not object to the dismissal of two jurors in his absence or to proceeding with a seven-member-jury.  However, two days later, immediately before closing arguments, Appellant requested a sidebar and challenged for the first time the number of jurors.  The trial court responded that it had advised Appellant of the jurors' removal earlier in the week without objection.  Appellant moved for a mistrial, which the trial court denied.

Prior to the jury's deliberation, the trial court instructed the jury that it had already been determined that Cloverly breached the November-December 2008 contract and that Post and Cloverly violated the Landlord Tenant Act by evicting Appellant after accepting two month's rent.  The jury was also instructed to decide if Attorney Wasser was liable for tortious interference, whether one or more Appellees violated the consumer protection law, and to determine any damages as to all claims.  On

---

[3] The trial court accurately observed that Philadelphia Civil Rule 1007.2 directs that jury trials must start with eight jurors and can continue so long as six remain in service.  Trial Court Opinion, 12/30/14, at 7.  **See also Ottavio v. Fibreboard Corp.**, 617 A.2d 1296, 1299 (Pa.Super. 1992) (since Rule 1007.2 only guarantees verdict of at least six jurors, "it was not error for the trial court to proceed with seven jurors after one of the original eight jurors had been excused because of illness").

December 4, 2013, the jury concluded that Appellees had not violated the consumer protection law and that Attorney Wasser had not tortiously interfered with the November-December 2008 contract between Appellant and Cloverly. It awarded Appellant $415 in damages for Cloverly's breach of contract and $200 in damages for Post and Cloverly's violation of the Landlord-Tenant Act.

Appellant filed post-trial motions on December 16, 2013, seeking J.N.O.V or a new trial, but since neither party was able to file their post-trial briefs within the window allowed by Pa.R.C.P 227.4(1)(b), the motions were denied by operation of law on April 15, 2013. On April 29, 2014, Appellees filed a *praecipe* to enter judgment on the verdict. Appellant filed a timely appeal on May 15, 2014, from the judgment entered on the verdict and complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued its Rule 1925(a) opinion, and the matter is ready for our review.

At the outset, we address Appellant's application for leave to substitute a revised certificate of compliance pursuant to Pa.R.A.P. 2135(d) for the certificate of compliance he purported to submit by way of his reply brief in contravention of the rule. As both of the certificates are defective, we deny Appellant's motion for substitution.

Pennsylvania Rule of Appellate Procedure 2135 limits the length of a principal brief to 14,000 words, and when the principal brief exceeds thirty

pages, the appellant must certify with the appellate court that the brief complies with the word limitation. Specifically, Rule 2135 provides,

> A principal brief shall not exceed 14,000 words and a reply brief shall not exceed 7,000 words . . . A party shall file a certificate of compliance with the word count limit if the principal brief is longer than 30 pages or the reply brief is longer than 15 pages when prepared on a word processor or typewriter.

Pa.R.A.P. 2135(a)(1);[4] *see also* Pa.R.A.P. 2135(d) **Certification of compliance** ("Any brief in excess of the stated page limits shall include a certification of compliance that the brief complies with the word count limits. The certification may be based on the word count of the word processing system used to prepare the brief.").

Instantly, Appellant's principal brief totaled fifty-four pages,[5] and therefore he was required to file a certificate of compliance with this Court pursuant to Rule 2135.[6] Appellant failed to file that document with his brief,

---

[4] Appellant's brief was due March 30, 2015; thus, we examine the version of the rule that became effective February 28, 2015. We observe, however, that since the 2015 revisions are organizational and stylistic rather than substantive, they do not affect our review beyond our references to the updated alphanumeric designations of the rule's sub-paragraphs.

[5] Appellant also violated Pa.R.A.P. 124(a)(4) by utilizing 12-point font in the text of his brief. Had he used 14-point font for the text, the minimum size permitted under the rule, the principal brief would have exceeded sixty-seven pages.

[6] Despite Appellant's concerted efforts to circumvent the application of Rule 2135, remarkably, he failed to petition this Court for leave to file a nonconforming brief that exceeds the word limitation. His attempt to avoid

*(Footnote Continued Next Page)*

which exceeded the limit by 3,004 words. He initially sought to remedy his misstep by attaching a purported certification to his reply brief and asking this Court to treat it as annexed to his primary brief in compliance with Rule 2135(d). However, that certification, which was procedurally and substantively defective,[7] did not certify Appellant's compliance with the Rule 2135 or request permission to exceed the word limit. Instead, Appellant verified that he exceeded the restriction and used the reply brief as a platform to assert a litany of reasons why we should treat the brief as substantially compliant with the rule.

Thereafter, Appellant filed the instant application for leave to substitute the defective certification that he affixed to his reply brief with a new, albeit equally defective, certificate of compliance that invokes the 16,500 word limit that applies to cross appeals under Pa.R.A.P. 2136. *See* Rule 2135(a)(2). Appellant concedes the obvious fact that the instant matter does not involve cross appeals and that his brief nevertheless would exceed that increased limit. However, equating his consolidated appeal with

---
*(Footnote Continued)*

Rule 2135 after the fact is procedurally incorrect. *DeMasi v. DeMasi*, 530 A.2d 871, 874 n.1 (Pa.Super. 1987) ("Wife's preamble requesting this court's indulgence in studying her lengthy brief is procedurally incorrect; parties shall present a motion for leave of court to file briefs exceeding maximum length.").

[7] An appellant may not use a reply brief to raise new issues or remedy issues raised but inadequately developed in the principal brief. *Commonwealth v. Fahy*, 737 A.2d 214, 218 n.8 (Pa. 1999).

a cross appeal, Appellant advances the innovative argument that consolidation necessitates that we allot him a 28,000 word-limit, *i.e.*, double the 14,000 word limit that is typically applicable to principal briefs. Thus, by Appellant's reasoning, his bloated fifty-four paged principal brief satisfied Rule 2135 by approximately 11,000 words. For the following reasons, however, we disagree and deny Appellant's application for leave to file the substitute certification of compliance for the faulty certificate he attached to his reply brief.

Stated plainly, Appellant's rationale is faulty. Generally, when this Court consolidates appeals, we direct that the matters are to be argued and briefed as one. That is, we require appellants in consolidated cases to present a single principal brief that complies with the Rules of Appellate Procedure. Nothing in the rules of procedure can be interpreted as supporting Appellant's suggestion that an appellant with consolidated cases is entitled to a relaxed word limit, much less a twofold increase in the length of the principal brief. If the Supreme Court intended for Rule 2135 to accommodate appellants in consolidated appeals similar to the exception that it carved for parties in cross appeals, Rule 2135 would express it. As the rule does not identify an exception for consolidated appeals, Appellant's argument that consolidation compels the expanded 28,000-word limit is unpersuasive.

Additionally, even if we were to find Appellant's position convincing, which we do not, we would nevertheless be constrained to recognize that Appellant specifically requested that this Court consolidate his sequentially listed appeals. Thus, assuming *arguendo* that Appellant had a legitimate argument, he could easily have avoided the instant predicament simply by declining to request consolidation at the onset.

Moreover, we observe that Appellant's prolix brief is unwarranted because the underlying landlord-tenant action should not have spawned two lawsuits in the first place, and Appellant is solely responsible for the current procedural posture. The lawsuits involve common questions of law and fact that arose from a single landlord-tenant dispute stemming from Appellant's eviction for the nonpayment of rent. While an attentive attorney would have filed a single lawsuit against all defendants at the start, Appellant initially sued Cloverly's agents, Post and Attorney Wasser, and only subsequently sought to add Cloverly to that complaint. Indeed, in resolving Appellant's earlier appeal, we directed him to file an amended complaint on remand that, *inter alia*, **added** Cloverly as a defendant to the underlying civil suit he filed against Post and Attorney Wasser. ***See Pierre***, ***supra*** (unpublished memorandum at 11-12). However, Appellant failed to comply with our instructions due to the fact that, while that appeal was pending before this Court, Appellant prematurely initiated a **separate** lawsuit against Cloverly

on February 16, 2012. Fortunately, on September 26, 2013, the trial court consolidated the overlapping actions for trial.

Thereafter, Appellant filed two notices of appeal from the judgment entered on the jury verdict and requested the matters be consolidated for argument. He now invokes that consolidation as a basis to exceed the word limit. As this case should never have been bifurcated in the first place, Appellant cannot demonstrate that Rule 2135 impedes his ability to argue both aspects of these consolidated appeals without the inflated allowance that he requests. No relief is due.

In sum, Appellant flagrantly disregarded the Rule 2135 word limit and its procedure to certify compliance. We admonish Appellant for his defiance and deny his application for leave to substitute the proposed certificate of compliance. However, since the violation of Pa.R.A.P. 2135 was not so defective so as to preclude effective appellate review, we decline to dismiss the brief or quash the consolidated appeal. *See In re Estate of Glover*, 669 A.2d 1011, 1017 (n.1) (Pa.Super. 1996) ("While we agree that the brief, which contains 69 pages, does violate the page limitation of Pa.R.A.P. 2135, . . . [s]ince the brief is not so defective as to preclude effective appellate review, we will not quash the instant appeal."). Although we address all of the arguments advanced in Appellant's seemingly interminable brief, we stress that his profound prolixity is wholly ineffectual.

Appellant presents the following issues for our review:

- 13 -

   1. Did the trial court judge err in denying Appellant's motion for a directed verdict on his claims for tortious interference with contract and violation of the UTPCPL?

   2. Did the trial judge abuse her discretion by denying Appellant's motion for a mistrial because she removed two jurors outside his presence?

   3. Did the trial judge err by denying Appellant's motion for judgment notwithstanding the verdict regarding his claims for tortious interference with contract and violations of the UTPCPL?

   4. Did the trial judge err by denying Appellant's motion for a new trial because the jury's verdict was so contrary to the weight of the evidence as to shock one's sense of justice?

   5. Did the trial judge err by failing to charge the jury as to compensatory and punitive damages?

Appellant's brief at 2-3.

   Appellant's brief is noncompliant with the Pa.R.A.P. 2119 requirement that the "argument shall be divided into as many parts as there are questions to be argued[.]" Pa.R.A.P. 2119(a). Rather than presenting concise arguments consistent with the five questions that he presented for our review, Appellant combined his first, third, and aspects of his fourth issue under the heading "Judgment As Matter Of Law." Appellant's brief at 16. He followed that argument with a discussion under the heading "New Trial," *id*. at 30, wherein he repeats the weight-of-the-evidence arguments presented in his first argument, assails the jury's award of damages, and challenges the trial court's decision to excuse two jurors in his absence. Finally, under the heading "Jury Instructions," Appellant contests the trial

court's jury instruction regarding compensatory and punitive damages. *Id*. at 42. We address the arguments as they appear in Appellant's brief.

Appellant first argues that the trial court erred in denying his motion for directed verdict on his claims regarding tortious interference with a contract and the alleged violation of the consumer protection law. He asserts that the evidence he adduced during trial supported a *prima facie* case for both of the claims. For the following reasons, no relief is due.

Our standard of review with respect to the denial of a directed verdict is the same as a motion for J.N.O.V. ***Faherty v. Gracias***, 874 A.2d 1239, 1245-46 (Pa.Super. 2005). We will only reverse the lower court when we find an abuse of discretion or an error of law that controlled the outcome of the case. *Id*. at 1246.

> The trial judge, however, may only grant a directed verdict motion where the facts are clear and there is no room for doubt. In so determining, the trial court "must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony.

*Id*. at 1247.

In order to prevail on a claim for tortious interference with contract, it is necessary to show: 1) a contract; 2) purposeful action taken by a third party to interfere with the contract; 3) an absence of justification for the action taken; and 4) actual damages sustained by the plaintiff as a result. ***Walnut Street Associates, Inc., v. Brokerage Concepts, Inc.***, 982 A.2d

94 (Pa.Super. 2009). It is for the jury to decide upon the credibility of the witness testimony if only oral evidence of a disputed fact is presented. *Heffernan v. Rosser*, 215 A.2d 655 (Pa. 1966).

Appellant's claim for the directed verdict for tortious interference relies primarily on the actions of Attorney Wasser in signing and filing the writ of possession that was granted to Cloverly on November 21, 2008. The writ was executed approximately two weeks later, after Appellant had already submitted money orders for rental payments for December 2008 and January 2009. Appellant argues that, because Attorney Wasser continued to proceed with his eviction on December 8, 2008, after he had submitted payment to Post for December and January, she tortiously interfered with the new rental contract that the motions court found to have existed as a matter of law between Appellant and Cloverly for the month of December. Thus, Appellant argues that he was entitled to have the trial court direct the jury to enter a verdict in his favor and against Attorney Wasser for tortious interference with a contract.

In rejecting Appellant's request, the trial court reasoned that, as Cloverly's attorney, Ms. Wasser was an agent for Cloverly during the eviction proceedings, rather than a third party—an essential element of the claim. Therefore, she could not be held liable for tortious interference with the contract. In order to circumvent the trial court's reasoning, Appellant asserts that, since Attorney Wasser's actions violated the Landlord Tenant

Act, her missteps were tantamount to illegal conduct that was inescapably outside the scope of her role as Clover's agent. Appellant posits that the trial court, rather than the jury, should have decided whether Attorney Wasser's conduct constituted a tortious interference with contract. *See* Appellant's brief at 23. We disagree.

Preliminarily, we reject Appellant's attempt to equate a violation of the Landlord Tenant Act with the commission of a criminal offense. As the Landlord Tenant Act is not a criminal statute, it provides for civil remedies. It is beyond cavil that "[a]n admitted agent is presumed to be acting within the scope of his authority where the act is legal and the third party has no notice of the limitations on the agent's authority." *Bolus v. United Penn Bank*, 525 A.2d 1215 (Pa.Super. 1987). Thus, civil liability for any transgressions that Attorney Wasser committed as Cloverly's agent during the admittedly improper eviction proceedings were attributed appropriately to Cloverly as the principal. Appellant's attempted analogy is legally erroneous.

Furthermore, the lower court explained that it denied Appellant's motion for a directed verdict on this claim, in part, because all of the evidence Appellant presented at trial in support of his position was oral testimony that required the fact finder's credibility determinations. Therefore, the issue was within the province of the jury, rather than the trial

court, to decide. As the trial court's rationale is consistent with our High Court's rationale in **Heffernan**, *supra*, we will not disturb it.

Next, we address Appellant's claim that he was entitled to a directed verdict on the issue of the alleged consumer protection violations. Appellant accuses Coverley of "deceptive conduct" as a result of the fact that Cloverly had received his payments for December and January, yet still proceeded with the eviction before the end of his December rental term. He further states that Cloverly breached the implied warranty of habitability attached to his residential contract for those months due to oral evidence which he asserts evidences an infestation of cockroaches and rodent vermin in his former apartment.

In denying Appellant's motion for a directed verdict, the trial court reasoned that, since the evidence Appellant relied upon to establish the consumer protection claim and application of the implied warranty of habitability was entirely oral testimony, the claims had to be submitted to the jury as the ultimate arbiter of fact. As noted, *supra*, the trial court's rationale is consistent with established case law. **See Heffernan**, **supra**. Moreover, Appellees' witness, Yvette Stewart, contradicted Appellant's allegations that the apartment was infested with vermin while Appellant lived there. Ms. Stewart testified that the infestation had occurred only after Appellant was evicted and failed to remove all of his possessions. Thus, the credibility of this claim was the jury's issue to determine.

- 18 -

The third argument Appellant presents under the heading "Judgment As a Matter of Law" goes to the sufficiency of the evidence presented at trial. He asserts that the trial judge erred by failing to grant his post-trial motion for J.N.O.V. He contends that the evidence was such that "no two reasonable minds" could disagree that the jury should have found for Appellant on all counts. "[A] judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner." *Moure v. Raechule*, 604 A.2d 1003, 1007 (Pa. 1992) (citation omitted). In order to prevail on a J.N.O.V. claim, the moving party must prove that they are either entitled to judgment as a matter of law, or that the evidence was such that no two reasonable minds could have disagreed that the verdict should have been rendered in the movant's favor. *Id*. Instantly, Appellant bases his argument that the denial of his motion for J.N.O.V. was in error almost entirely on testimony adduced from Attorney Wasser at trial.

Herein, inconsistencies can be gleaned from testimony both parties presented during the course of the trial. As the ultimate arbiter of fact, the jury made credibility determinations in Appellees' favor and against Appellant. The evidence was not so unreliable or contradictory as to render verdict thereon pure conjecture. As a result, we find that the trial court did not abuse its discretion by denying Appellant's J.N.O.V. motion. *See Brown v. Trinidad*, 111 A.3d 765 (Pa.Super. 2015) ("If any basis exists upon

which the court could have properly made its award, then we must affirm the trial court's denial of the motion for J.N.O.V.").

Next, we address the issues that Appellant asserted under the heading "New Trial." Appellant's brief at 30-42. Appellant presents a litany of allegations that the jury verdict was against the weight of the evidence. His claims range from reiterations of his foregoing challenges relating to tortious interference and violations of the consumer protection law to complaints that the damage awards for Cloverly's breach of contract and violation of the Landlord Tenant Act should be set aside as insufficient. Essentially, he argues that defense verdicts and the paltry damage awards totaling $ 615, all "shock one's sense of justice and require another opportunity for justice to prevail." Appellant's brief at 36. Thus, he demands a new trial.

Appellant levels several challenges to various aspects of the trial court's determinations. We address these issues in the order they are argued, and for the reasons explained below, deny relief. As it relates to the weight of the evidence regarding his alleged compensatory damages for Cloverly's breach of contract, Appellant insists that he is entitled to the replacement value as a measure of damages for the clothing and personal property that he failed to remove from the apartment following his eviction. We disagree.

This Court previously held that Appellant's claims to recover damages for his lost personal property sound in conversion rather than contract and

that the two-year statute of limitations for conversion had expired when Appellant sought leave to amend his complaint for those damages. *Pierre*, *supra* (unpublished memorandum at 9-10, 11-12 ("On remand, Pierre may file the amended complaint as attached to his motion for leave to amend, but with all proposed claims sounding in fraud, negligence, conversion, and wrongful retention of personal property under the Landlord Tenant Act excised from.")  As our prior ruling is the law of the case, we are bound by it.  *See George v. Ellis*, 911 A.2d 121, 125 (Pa.Super. 2006) (quoting *Commonwealth v. Viglione*, 842 A.2d 454, 461–62 (Pa.Super. 2004)) ("Among the related but distinct rules which make up the law of the case doctrine [is] that: . . . (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court[.]").  Thus, Appellant's instant claim fails.

Appellant next asserts that the weight of the evidence did not support the defense verdict for tortious interference.  Again, he claims that, through its agent, Attorney Wasser, Cloverly deceived him by accepting rents for November and December 2008 through Post and remained silent about the payment until his eviction three weeks later.  As we addressed this issue in rejecting Appellant's arguments in favor of a directed verdict, we do not revisit the merits of Appellant's complaint.  However, we highlight that, since the jury expressly determined that Attorney Wasser was acting as Cloverly's agent during the relevant period, she could not be deemed a third party who

tortiously interfered with the November–December 2008 contract. Thus, Appellant's tortious interference claim is wholly unfounded. Moreover, while the trial court acknowledged that Cloverly's acceptance and failure to return part of the December rent after the eviction constituted a breach of contract and a violation of the Landlord Tenant Act, the jury awarded Appellant the damages that it felt were appropriate for those claims, $615. As the jury's award of compensatory damages returned Appellant to where he was prior to Cloverly's breach of the November–December 2008 contract, *i.e.*, the prorated return of the monthly rental payments Appellant submitted prior to the eviction, he is not entitled to additional damages stemming from the same breach under the guise of a tortious interference claim.

In a related argument, Appellant assails the compensatory damages totaling $615 for the breach of contract and violation of the Landlord-Tenant Act. He alleges that this award was so insignificant in comparison to the injuries which he was suing on as to "shock one's sense of justice."

Our standard of review of claims involving damage awards is well settled.

> The general rule in this Commonwealth is that the plaintiff bears the burden of proof as to damages. The determination of damages is a factual question to be decided by the fact-finder. The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of the damages given by the witnesses. Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages. The fact-finder may make a just and

> reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.

*Judge Technical Services, Inc. v. Clancy*, 813 A.2d 879, 885 (Pa. Super. 2002) (citation omitted).

Having already disposed of Appellant's misdirected claim that the compensatory damages award should account for the replacement value of the personal property that he abandoned during the eviction process, we observe that Appellant does not advance any other cogent argument explaining how the $615 award was against the weight of the evidence. The only other relevant position that we glean from Appellant's rambling assertions centers on the fact that the compensatory damage award was less than one month's rent. However, mindful that Appellant remained in possession of the apartment through November 2008 and that the eviction occurred after the first week of December, the award reflected a prorated return of the balance of his rental payment. Thus, we sustain the trial court's determination that Appellant's damage-related weight of the evidence claim fails.

Appellant next asserts that a new trial is necessary to remedy the trial court's failure to present to the jury whether he was entitled to treble damages under the consumer protection law. Appellant relies upon our holding in *Wallace v. Pastore*, 742 A.2d 1090, 1092 (Pa.Super. 1999), for the principle that a violation of the Landlord Tenant Act which constitutes an

"unfair trade practice" could also warrant treble damages under the consumer protection law. In **Wallace**, we affirmed the trial court's award of treble damages in the amount of $1,800 under the consumer protection law after a landlord improperly withheld his former tenants' $600 security deposit. We rejected the landlord's contention that the consumer protection law did not apply in that case. The **Wallace** Court reasoned that the landlord had engaged in a deceptive business practice by misrepresenting the extent of property damage that he alleged the tenants caused to the apartment and that his misrepresentation was actionable under § 201-2(4)(xv) of the consumer protection law.

Unfortunately for Appellant, our holding in **Wallace** is inapplicable. Stated plainly, Appellant's positon ignores the jury's express finding that neither Cloverly, Post, nor Attorney Wasser violated the consumer protection law. **See** Special Verdict Questionnaire, 12/4/13, ¶7. Thus, no damages are warranted under that statute. Moreover, although Cloverly violated the Landlord Tenant Act by mistakenly executing the writ of possession after its agent accepted two months rental payments for the premises, the facts of this case did not involve deceptive business practices, misrepresentation, outrageous conduct, or a self-help eviction where the landlord converted a tenant's property to a satisfy an alleged delinquent debt. **Cf. Wallace**, **supra** and **Pikunse v. Kopchinski**, 631 A.2d 1049 (Pa.Super. 1993) ("in retaliation for appellee's failure to pay rent, appellants deliberately threw

away items, such as furniture and appliances, which were clearly needed by appellee for everyday living."). Therefore, **Wallace** has no application herein.

The second component of Appellant's argument in favor of a new trial concerns the trial court's removal of two jurors for cause on the day Appellant was absent from court. Appellant argues that the trial court abused its discretion by denying his motion for a mistrial on this issue. He also contends that the trial court erred by failing to state the reasons for their removal on the record. Appellant bases his argument on the standard for juror removal by trial courts that our Supreme Court recently clarified in **Bruckshaw v. Frankford Hospital**, 58 A.3d 102, 113 (Pa. 2012). The **Bruckshaw** Court concluded, "We therefore hold that the removal of a juror can only be done by a trial court, on the record, in open court, with notice to the parties, for cause." **Id**.

We do not address the merits of Appellant's claims regarding the discharge of two jurors and the alleged violation of **Bruckshaw** because Appellant failed to timely and specifically object to the reduction until two days after the court advised him of the change. The following facts are relevant to the waiver of Appellant's claim. Appellant was absent from court on November 27, 2013, the day before Thanksgiving. Although this landlord-tenant dispute should have been decided prior to Thanksgiving, the litigation had proceeded at a snail's pace and that date was only the third

day of what turned out to be five-day trial. Due to Appellant's absence on November 27, 2013, the trial court suspended testimony and excused the jurors for the holiday weekend. Prior to adjourning for the holiday, however, the trial court excused one juror after discovering that the juror had suffered a seizure and another juror so that he could attend a mandatory business meeting the following week. N.T., 12/04/13, at 17-18. The latter juror had not disclosed the previously scheduled work obligation during *voir dire* because he was informed that the case would be concluded prior to Thanksgiving. *Id*. at 17. Testimony resumed on December 2, 2013, at which point, the trial court informed Appellant of the reduction in the number of jurors. N.T., 12/02/13, at 12. Appellant failed to object to their dismissal at that time, and, in fact, did not question the number of jurors or move for a mistrial based on the argument that their removal was improper. Those objections were not leveled until the last day of trial, two days later. N.T., 12/04/13, at 17-18. Under these facts, this issue is waived. "In order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court." **Hong v. Pelagatti**, 765 A.2d 1117, 1123 (Pa.Super. 2000).

Assuming, *arguendo*, that the issue was preserved, it fails on the merits. Contrary to the factual scenario in **Bruckshaw**, where the trial court neglected to inform the parties that a juror who sat through the entire trial had been replaced immediately prior to deliberations, in the present

case, the trial court advised the parties in open court that two jurors had been excused and that the case would proceed with seven. Thus, the concern highlighted in **Bruckshaw**, *i.e.*, the potential for a surreptitious removal of a juror, is not implicated herein. Thus, even if Appellant had leveled timely objections to the removal of two jurors or proceeding with a panel of seven jurors, which he did not, his claim fails.

Finally, Appellant contends that the trial judge erred by failing to charge the jury as to punitive and compensatory damages.[8] These assertions rehash claims that we addressed *supra*. First, Appellant complains that the trial court failed to advise the jury to consider as a component of Appellant's compensatory damages his cost to replace the personal property he abandoned during the eviction process. Again, Appellant fervently asserts that he was entitled to his recovery cost, and he once more ignores the dispositive fact that this assertion, *i.e.*, that Cloverly appropriated his personal property, sounds in conversion, a claim that this Court previously determined was barred by the statute of limitations.

_____

[8] Ostensibly as components of his challenge to the trial court's jury instructions on damages, Appellant presents extensive argument concerning the trial court's alleged bias toward Appellees, judicial misconduct, and improper advocacy of Appellees' positions. However, since, at best, these claims are tangentially related to the propriety of the trial court's jury instructions, and because Appellant failed to suggest these arguments in his statement of questions presented on appeal, we do not address the disjointed assertions herein.

*Pierre*, *supra*, (unpublished memorandum at 9-10). As the Appellant was estopped from re-litigating the conversion/wrongful-retention-of-property claim, the trial court did not err in failing to instruct the jury to consider Appellant's replacement costs in calculating his damages for Cloverly's breach of contract and violation of the Landlord Tenant Act.

The second aspect of Appellant's challenge relates to the trial court's refusal to instruct the jury as to punitive damages. Our High Court outlined the relevant law as follows:

> This Court has adopted Section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages. That provision permits punitive damages for conduct that is 'outrageous because of the defendant's evil motives or his reckless indifference to the rights of others.' Restatement (Second) of Torts § 908(2) (1977). A court may award punitive damages only if the conduct was malicious, wanton, reckless, willful, or oppressive. The proper focus is on 'the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties.

*Rizzo v. Haines*, 555 A.2d 58, 69 (Pa. 1989) (internal citation omitted).

It is unclear from Appellant's brief precisely what conduct he purports to predicate his claim to punitive damages. To the extent that Appellant invokes Attorney Wasser's execution of the writ for possession after a different Cloverly agent, Post, had accepted two months of future rental payments, we find no basis to disturb the court's determination that, "[t]he evidence in the present case did not rise to the level of intentional, willful, wanton or reckless conduct." Trial Court Opinion, 12/30/14, at 13.

Furthermore, to the extent that Appellant invokes our holding in ***Pikunse***, ***supra*** for support of his claim, his reliance upon that case is misplaced in light of the procedural posture of the instant matter. In relevant part, the ***Pikunse*** Court upheld the trial court's award of $7,500 in punitive damages for conversion after a landlord executed a self-help eviction, seized the tenant's personal property, and eventually disposed of it. In contrast to the factual scenario in ***Pikunse***, the case at bar did not involve distraint or a self-help eviction. While Cloverly's actions violated the Landlord Tenant Act, the violation was the result of a procedural misstep due to a lack of communications among Cloverly's agents rather than any conduct that was designed to be malicious, wanton, reckless, willful, or oppressive. Thus, an instruction on punitive damages was not warranted under ***Rizzo***, ***supra***. Moreover, as noted *supra*, to the extent that Appellant attempts to invoke the loss of his personal property as the basis for punitive damages, the crux of that claim is barred by the statute of limitations. Hence, it too must fail.

In conclusion, Appellant's claims fail on all counts. First, since Appellant failed to object to the removal of two jurors when he was first informed of the change, that claim is waived. Next, the argument in favor of entering directed verdicts on tortious interference with contract and the alleged violations of the consumer protection law presupposes both the existence of a third-party relationship between Attorney Wasser and Cloverly, which was disputed at trial, and that Appellant's oral testimony

concerning Appellees' "deceptive conduct" as well as the alleged breach of the implied warranty of habitability was uncontroverted, which it was not. Additionally, Appellant failed to demonstrate that the trial court abused its discretion in denying either Appellant's claims regarding the weight of the evidence or his motion for J.N.O.V. Likewise, Appellant's claim that the trial court erred in declining to instruct the jury on the issues of compensatory and punitive damages is patently meritless.

Application to substitute Rule 2135(d) certificate of compliance denied. Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/8/2015